THE COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT
CASE NO. _____

| | |
|---|---|
| SANDRA BARBOSA AND ALESSANDRO COSTA ) <br> Petitioners ) <br> v ) <br> DEUTSCHE BANK NATIONAL TRUST ) <br> COMPANY AS TRUSTEE FOR ) <br> GSAMP 2006-FM1 ) <br> Respondent ) | VERIFIED PETITION |

## PETITION

NOW COMES Sandra Barbosa and Alessandro Costa (hereinafter, Petitioners) by and through their Attorney does further declare under the pains and penalties of perjury, the following to be true and correct to the best of their knowledge and belief.

Petitioner does hereby "*FILE PETITION*" as allowed per Massachusetts General Law, Chapter 240 §11. This honorable court has jurisdiction pursuant to the said statute. Deutsche Bank National Trust Company as Trustee of GSAMP 2006-FM1 (hereinafter, Respondent) wrongfully foreclosed on the Petitioners' property at 165 Graves Road in Revere, Massachusetts. Respondent failed to provide proper notice of the sale as required by Massachusetts General Law Chapter 244 §14. Furthermore, Respondent breached their duty of good faith and fair dealing when they opted to start a loan modification and then refused to make it permanent with no reason or excuse, and holding the foreclosure before notice was given to Petitioners that the loan modification had been denied. In addition, all loans issued by the originator of the Petitioners' home loan are subject to an injunction, which Respondent violated.

## INTRODUCTION



This matter stems from a mortgage loan transaction originating between the Petitioner and Fremont Investment and Loan (hereinafter Fremont) and Mortgage Electronic Registration Systems, Inc. (hereinafter MERS), dated January 17, 2006 and recorded in the Suffolk County Registry of Deeds. Respondent currently claims the said note and mortgage via an assignment from MERS dated March 6, 2009 and recorded in the Suffolk County registry of deeds.

Petitioners were not given written notice of the foreclosure sale prior to the sale taking place. They had reached an agreement for a loan modification with America's Servicing Co. (hereinafter ASC), Respondent's loan servicer, and had made their three required trial payments, plus an additional fourth payment under the modification plan. They were not informed that their loan modification had been denied until nearly two weeks after the purported foreclosure sale took place. Respondent never sought permission of the Massachusetts Attorney General to foreclose as required for loans originated by Fremont in the Commonwealth of Massachusetts. Therefore, unless Respondent can prove that proper notice was given, the Attorney General's permission was requested, and that there were no other violations, the foreclosure must be abandoned and the prior judgment of the Land Court should be vacated.

## FACTUAL ALLEGATIONS REGARDING EVIDENCE OF RECORD

1.) Sandra Barbosa moved to this country from Brazil in 1995, seeking a better life for herself and her then high school aged son, Alessandro. Since then, Ms. Barbosa has worked diligently as a house keeper to provide for herself and her son. Mr. Costa finished his high school education in the Boston Public Schools, went to college at the University of Massachusetts, and now works as the Director of Technology at TechBoston Academy, a Boston Public School, where he not only is responsible for technical support of the school's computers, but also for teaching the students how to provide technical support themselves, and for mentoring them and providing after school activities to keep them off the streets. While Mr. Costa works nearly 60 hours a week for the school, he also works part time doing technical support for a local cleaning company.

2.) At the end of 2005, after working diligently in this country for years, Petitioners decided to seek the American Dream and purchase a home of their own. On or about January 17, 2006, they purchased a home at 165 Graves Road in Revere, granting a mortgage to Fremont and MERS.

3.) Petitioners took out a first loan for $312,000.00. The loan was for an adjustable rate mortgage. It had a teaser rate of 7.7% for two years, which adjusted to the LIBOR rate plus 5.288%. The loan included a balloon payment of $202,305.90 after 30 years. The loan included $5770.80 in settlement costs, plus $1560.00 yield spread premium which was paid outside of the closing.

4.) Petitioners took out a second loan as well. This loan was for $78,000.00, including $804.90 of costs. It was a 30 year, fixed rate loan at 10.325%.

5.) Petitioners were able to afford the loan for several years, with Ms. Barbosa working diligently and Mr. Costa taking his part time job.

6.) Petitioners first had trouble keeping up with their mortgage in the beginning of 2009. With the collapse of the economy, Ms. Barbosa lost several of her clients, and Mr. Costa temporarily lost his part time job. The mortgage payments became difficult, and then impossible with their reduced income.

7.) Mr. Costa first contacted ASC in August of 2009 seeking assistance. He was unable to obtain any help from ASC at that time.

8.) Petitioners then retained Andrea Beldini, a financial advisor to assist them in obtaining a loan modification.

9.) Ms. Beldini assisted Petitioners in negotiating with ASC. She repeatedly sent ASC financial information and all other requested data, and eventually obtained a trial modification plan for Petitioners in September of 2009.

10.) Petitioners made payments under the trial modification plan in October, November, and December of 2009, and January 2010. ASC sent petitioners a contract for a final loan modification, which Petitioners returned, signed, to ASC on or about January 27, 2010.

11.) Petitioners did not receive a mortgage bill in February, and so on or about February 17, 2010 Petitioners had Ms. Beldini contact ASC to enquire as to the status of the modification. ASC told Ms. Beldini that the signed final loan modification package had never been entered into ASC's computer system, and the home was facing an imminent foreclosure. ASC promised to send Petitioners a new modification package. ASC did so, and Petitioners signed and returned that package.

12.) Despite the active loan modification, Petitioners were stunned to have an auctioneer appear at their property on or about March 31, 2010. A representative of Respondent appeared at the auction, and Ms. Barbosa questioned him as what he was doing. The representative called the

bank, and told Ms. Barbosa that according to his records, she should have been informed that there had been a denial of their loan modification two days prior to the auction date. No such notice was received until April 13, 2010, two weeks after the purported foreclosure auction took place.

13.) Petitioners never received any written notice that an auction was scheduled. The only notice they received was an oral notification on February 17, 2010, when they had Ms. Beldini call ASC on their behalf.

14.) On April 6, 2010, Petitioners received a letter from ASC stating that their loan modification had been wrongfully denied, and their loan was being reviewed. On April 13, 2010, they received a letter, dated March 29, 2010, stating that their loan modification had been denied.

15.) Loans originated by Fremont in the Commonwealth of Massachusetts may not be foreclosed on until the foreclosing party seeks permission of the Attorney General to do so. *Commonwealth vs. Fremont Investment & Loan*, 452 Mass. 733 (2008). Upon information and belief, Respondent never sought permission of the Attorney General to foreclose, and so violated the injunction.

## SUMMARY AND CONCLUSION

1.) Respondent has not provided proper notice of the foreclosure sale as required by Massachusetts General Law 244 §14.

2.) Respondent has violated the injunction against foreclosures of loans originated by Fremont.

3.) Respondent has engaged in bad faith, first offering a loan medication, then denying it without giving any reason, and foreclosing before Petitioner learned of the denial. Furthermore, Respondents own servicer admitted, in writing, that the loan modification had been wrongfully denied.

4.) The Land Court should Order the Respondent to restore good and marketable title to the petitioner.

5.) The Land Court should award the Petitioners all costs, including legal fees, related to the filing of this Petition.

## RELIEF BY THE COURT

In light of the foregoing and evidence submitted herein, Petitioner does hereby petition this honorable Land Court with the following:

1.) Enter a decree vacating the foreclosure and any purported foreclosure, or foreclosure deed, pursuant to MGL C 244 section 14 executed by Harmon Law Offices or others on behalf of Deutsche Bank National Trust Company as Trustee for GSAMP 2006-FM1.

2.) Grant a lis pendens against the property during the pendency of these proceedings and an order staying the transfer of the property subject to the claims of Petitioner against Respondent.

3.) Enter a decree ordering the Respondent to reimburse all the costs of this action to the Petitioner, including, but not limited to, Filing Fees, the Costs of Service, the costs of any other third party expenses and the Petitioners attorney's fees.

4.) Such other relief or remedy for Petitioner this court may deem just and proper.

I, Alessandro Costa, have personal knowledge of all the facts stated above and hereby swear under pains and penalties of perjury that all facts herein stated are true and accurate to the best of my recollection and knowledge.

Date: 07/23/2010

Petitioner – Alessandro Costa

I, Sandra Barbosa, have personal knowledge of all the facts stated above and hereby swear under pains and penalties of perjury that all facts herein stated are true and accurate to the best of my recollection and knowledge.

Date: 07/23/2010

Petitioner – Sandra Barbosa

Respectfully submitted on behalf of the Petitioner by:

Counsel to Petitioner
Daniel S. Hyman
Perez-Kudzma Law Office
413 Boston Post Road
Weston, Ma 02493
781-209-5596
attorneyhyman@gmail.com
BBO # 674106

7/26/10